**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lida Cestro, through her guardian Dominick Cestro,<br><br>    Plaintiff,<br><br>vs.<br><br>LNV Corporation, a Nevada corporation, et al.,<br><br>    Defendants. | No. CV-10-01507-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant LNV Corporation's ("LNV") Motion to Dismiss First Amended Complaint With Prejudice (Doc. 38).

**I.　Legal Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). "Something labeled a complaint . . ., yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180.

1    Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal
2 theory" or "the absence of sufficient facts alleged under a cognizable legal theory."
3 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim
4 under Rule 8 and avoid dismissal under Rule 12(b)(6), a complaint must contain "only
5 enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at
6 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows
7 the court to draw the reasonable inference that the defendant is liable for the misconduct
8 alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  "The plausibility
9 standard is not akin to a 'probability requirement,' but it asks for more than a sheer
10 possibility that a defendant has acted unlawfully." *Id.*

11    First, allegations in the complaint that are not entitled to the assumption of truth
12 must be identified. *Id.* at 1949, 1951.  The principle that all of the allegations in a
13 complaint are accepted as true does not apply to legal conclusions or conclusory factual
14 allegations. *Id.* at 1949, 1951.

15    Second, whether the factual allegations plausibly suggest an entitlement to relief
16 must be determined. *Id.* at 1950, 1951.  This determination is "a context-specific task that
17 requires the reviewing court to draw on its judicial experience and common sense." *Id.* at
18 1950.  To show that the plaintiff is entitled to relief, the complaint must permit the court
19 to infer more than the mere possibility of misconduct. *Id.*

20    Certain elements of fraud claims must satisfy a higher standard of pleading under
21 the Federal Rules of Civil Procedure.  In alleging fraud or mistake, malice, intent,
22 knowledge, and other conditions of a person's mind may be alleged generally, but the
23 circumstances must be alleged with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b) requires
24 allegations of fraud to be "specific enough to give defendants notice of the particular
25 misconduct which is alleged to constitute the fraud charged so that they can defend
26 against the charge and not just deny that they have done anything wrong." *Bly-Magee v.*
27 *California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  Plaintiffs alleging fraud "must state the

time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II. Facts Assumed True

For this motion to dismiss, Plaintiff's allegations of material fact are assumed to be true and are construed in the light most favorable to her. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Stated here are just the allegations of the First Amended Complaint and information from exhibits attached to or referenced in the First Amended Complaint, and the Court does not determine whether they are true.

Plaintiff Lida Cestro is an elderly resident of Phoenix, Arizona. On March 24, 2004, Plaintiff was found to be incapacitated and in need of the protection of a guardian, and on that date the Maricopa County Public Fiduciary was appointed as her legal guardian.

On December 24, 2005, Plaintiff executed a Deed of Trust, Note, and other documents to refinance her home loan, which increased her debt from $104,119.91 to $150,000.00, reduced her monthly payments, and included a variable interest rate. Lender Services Direct, Inc., through its agent Branden Sanz, originated the loan documentation and the loan. The documents prepared by Mr. Sanz included a stated income asset certification that falsely represented Plaintiff's income. Mr. Sanz also prepared documentation at the time of the loan transaction that falsely indicated Plaintiff was the owner and/or employee of an auto body shop in Glendale, Arizona.

Plaintiff received approximately $35,000.00 in cash from the refinancing. Her first payment was due February 1, 2006, and she initially made payments on the Note as agreed. GMAC Mortgage was the original servicing agent for the loan.

On May 4, 2006, Plaintiff's son, Dominick Cestro, was appointed as her successor guardian.

1   In March 2008, the Deed of Trust and Note were assigned to LNV. To the best of
2   her knowledge, Plaintiff remained compliant with the terms of the home loan through
3   October 31, 2008.

4   On October 10, 2008, Plaintiff was notified that her loan servicing was transferred
5   from GMAC Mortgage to MGC Mortgage. On October 27, 2008, she was notified to
6   send payments after October 27, 2008, to GMAC Mortgage because unexpected technical
7   issues prevented MGC Mortgage from accepting payments. On October 31, 2008,
8   GMAC Mortgage sent Plaintiff a "Debt Validation Letter" that began the debt collection
9   efforts by GMAC Mortgage on behalf of MGC Mortgage as servicer for LNV. On
10  November 4, 2008, GMAC Mortgage notified Plaintiff it would be completing a full audit
11  on her account to ensure all transactions had been properly credited.

12  On December 1, 2008, GMAC Mortgage notified Plaintiff that her loan was in
13  default, which she could cure by paying $5,321.36 ($4,706.13 for payments, $391.08 for
14  late charges, and $224.15 for other fees and costs). In response to inquiry by Plaintiff's
15  guardian, representatives of GMAC Mortgage or MGC Mortgage informed the guardian
16  to make $800 monthly payments until the status of the loan could be determined.
17  Plaintiff's guardian attempted to negotiate a loan modification or other resolution, but
18  was never provided a final response. MCG representatives informed Plaintiff's guardian
19  that they were unable to locate his documents and he would need to submit the
20  information again.

21  On December 31, 2008, GMAC Mortgage began the foreclosure process by
22  notifying Plaintiff that her account would be sent to an attorney to initiate a foreclosure
23  action. On January 27, 2009, GMAC Mortgage, on behalf of LNV, substituted Executive
24  Trustee Services, LLC, for Lenders Services Direct as the trustee under the Deed of Trust.
25  On January 27, 2009, Executive Trustee Services recorded a Notice of Trustee's Sale for
26  May 11, 2009, which identified LNV as the beneficiary.

1        On February 2, 2009, LNV notified Plaintiff of her total delinquency ($7,905.75) and entire debt amount ($170,976.67) as of that date and that the amount would increase until the debt was fully cured or paid. On February 9, 2009, GMAC Mortgage notified Plaintiff that the documents submitted in support of a loss mitigation alternative were incomplete and that copies of her most recent paystub and bank statements were required. On February 11, 2009, Plaintiff's guardian provided GMAC Mortgage with proof of all 2008 mortgage payments and explained her economic hardship.

       On May 1, 2009, Plaintiff's guardian filed an action in Maricopa County Superior Court against GMAC Mortgage and Executive Trustee Services. On November 2, 2009, a stipulated order enjoining the sale of real property issued. On April 14, 2010, a judgment of dismissal was entered.

**III. Procedural Background**

       On July 6, 2010, Plaintiff's guardian filed this action in Maricopa County Superior Court. (Doc. 1-2.) On July 16, 2010, the case was removed to federal court. (Doc. 1.) On July 19, 2010, the parties stipulated to enjoin the trustee's sale of Plaintiff's residence until further order of the Court authorizing the sale. (Doc. 7.)

       On September 20, 2010, LNV moved for judgment on the pleadings. (Doc. 26.) On November 9, 2010, LNV's motion was granted to the extent it sought dismissal of Counts I and II of the Complaint, which were the only counts alleged against LNV, and Plaintiff was granted leave to amend her Complaint. (Doc. 34.)

       On December 13, 2010, Plaintiff filed a First Amended Complaint for Declaratory Relief and Injunctive Relief. (Doc. 35.)

**IV. Analysis**

      **A.**     **Plaintiff's Claims Are Not Barred by a Statute of Limitations.**

       Although the issue is raised in LNV's motion, in its reply LNV does not dispute Plaintiff's contention that limitations periods applicable to Plaintiff's causes of action are tolled under A.R.S. § 12-502 because she was "of unsound mind" at the time the cause of

action accrued. *See Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped*, 150 Ariz. 50, 55-56, 721 P.2d 1177, 1182-83 (Ct. App. 1986) (tolling of action based on being "of unsound mind" is not affected by appointment of a guardian). Any challenge that Plaintiff's claims are barred by a statute of limitations is therefore waived.

**B. The First Amended Complaint Fails to State a Claim for Fraud Against LNV.**

Counts I and II of the First Amended Complaint seek declaratory and injunctive relief against LNV, and Count III of the First Amended Complaint is titled "Fraud and Misrepresentation – Defendant Lenders Direct." Paragraphs 93, 94, 95, 99, 100, and 101 of Count III refer to LNV, paragraph 101 alleges that LNV should be subjected to punitive damages, and the prayer for relief demands judgment against "Defendants, jointly and severally" that includes rescission of the Loan and restructuring of the Loan "in a manner consistent with the type of loan the property had before the fraud."

Plaintiff's response to the motion to dismiss, however, does not defend any claim of fraud as to LNV, only as to Lenders Direct. She does not respond to LNV's assertion that "there is nothing in the [First Amended Complaint] that identifies the specific conduct LNV is alleged to have engaged in, how this alleged conduct violated Plaintiff's rights, and how the conduct ostensibly caused Plaintiff any injury." (Doc. 38 at 6.) She does not allege that LNV made any false statements to her or participated in the loan origination in any way. Rather, Plaintiff reasons that because the loan was originated by Lenders Direct through fraudulent conduct and LNV knew or should have known of the fraud, LNV cannot enforce the Deed of Trust and Note. Thus, if Plaintiff intended to plead a fraud claim against LNV, the First Amended Complaint fails to do so.

Further, Plaintiff's pleading of fraud against Lenders Direct does not satisfy the requirements of Fed. R. Civ. P. 8(a), 12(b)(6), and 9(b). The pleading does not allege that Lenders Direct, through its agent, made any false statements to Plaintiff other than "the mortgage loan would be a sound financial decision given that Plaintiff was on Social

- 6 -

Security income and the negative amortization's initial rate and minimal payment would afford Plaintiff flexible payments." (Doc. 35 at 18.) At the age of 85, Plaintiff received approximately $35,000.00 in cash from the refinancing, and she made her monthly payments for more than three years. Allegations that false representations Lenders Direct made to others about Plaintiff's income caused her injury lack facial plausibility. *See Iqbal*, 129 S. Ct. at 1949.

Therefore, the First Amended Complaint fails to state a claim for fraud upon which relief can be granted.

**C. Assuming the Deed of Trust and Note Are Voidable Due to Plaintiff's Incapacity, to Rescind Them She Must Tender the Proceeds from the Loan Transaction.**

Plaintiff contends that, because of her incapacity, the Deed of Trust and Note are voidable and unenforceable, and she is not required to tender the proceeds of the loan transaction to LNV. Plaintiff reasons that LNV assumed the risk that the Deed of Trust and Note were voidable and unenforceable because it failed to investigate whether she was competent to enter into the loan transaction and able to repay the loan.

Plaintiff cites no authority for her assertion that "LNV had a duty of care to use due diligence to verify that the subject loan transaction was not induced by fraud or was otherwise an invalid transaction." (Doc. 35 at 5.) She alleges that LNV knew or should have known that the income information submitted on her loan application was false because if she earned that much income she would not live in that neighborhood. She also alleges that minimal investigation would have revealed the public record of her guardianship and "that there was absolutely no possibility that she would satisfy the terms of the loan due to her age." (Doc. 35 at 6.) However, before the Deed of Trust and Note were assigned to LNV in March 2008, timely payments on the loan had been made for

more than three years.[1]  Furthermore, by their terms, the Note secured by a Deed of Trust protected LNV against the risk that the borrower would not repay the loan.

When the grantor of a deed is incompetent, the appropriate remedy is full avoidance of the deed, but only if status quo can be restored:

> In Arizona, it is well established that the deed of an incompetent is voidable at the instance of the heirs and executors of the incompetent subject to the qualification that one seeking equity must also do equity. In voiding a deed, however, all parties must be returned to their original position. Thus the contract of an incompetent is voidable, and if the status quo ante can be restored, rescission can be decried upon the mere showing of incompetence. If, however, status quo cannot be restored and the grantee of the incompetent is a bona fide purchaser, rescission will be denied, despite the incompetency.

*Young v. Lujan*, 11 Ariz. App. 47, 49-50, 461 P.2d 691, 693-94 (1969) (citations omitted). Although "the general rule that restoration of the parties to their status quo prior to the contract is a prerequisite to rescission . . . is well-established in Arizona," a "defrauded plaintiff will not lose her right to rescind when the defendant is directly responsible for plaintiff's inability to return the subject matter of the rescinded contract." *Jennings v. Lee*, 105 Ariz. 167, 172, 461 P.2d 161, 166 (1969).

Plaintiff does not allege that LNV is directly responsible for her inability to return the proceeds she obtained from the loan transaction. She does not allege that LNV had any involvement whatsoever in the loan origination or servicing, only that LNV must bear the consequences for failing to exercise due diligence. As concluded above, Plaintiff has not stated a claim for fraud against LNV or Lenders Direct. Thus, under Arizona law, although Plaintiff's incompetence permits her to rescind the loan transaction, it does not free her from obligation to return the balance due on the loan. Oregon case law cited by Plaintiff, *Taylor v. Grant*, 220 Or. 114, 349 P.2d 282 (1960), held that a defrauded incompetent need not make restitution in order to rescind a transaction entered into as a

---

[1] Plaintiff states she maintained the payments on the Note for more than three years, and LNV purchased the interest in the Note two and a half years after the original transaction. (Doc. 41 at 15.)

- 8 -

result of the fraud, but it does not relieve the incompetent of restitution requirements where the party to be restored did not perpetrate the fraud.

Plaintiff also contends that if she were required to return the parties to the status quo ante, LNV is entitled only to the amount it actually paid for her Deed of Trust and Note, not the amounts stated on the face of the documents. But she cites no authority to support her position.

Further, Plaintiff contends that LNV has not provided her with the specific amount remaining to be paid under the Note. Although not plainly alleged in the First Amended Complaint, Plaintiff previously stated that "she does not have the ability to restore Defendants to their original position by refunding the $150,000 loaned to [her]" and she "does not have possession of any of the loan proceeds." (Doc. 29.) She does not now contend that she could or would tender the balance due under the Note. Because she has maintained that her incapacity precludes any liability for repayment and because the balance owed can be estimated, LNV's failure to provide a specific amount for repayment upon rescission does not relieve Plaintiff from her obligation to restore the parties to their status before the loan transaction.

Thus, Plaintiff's rescission will be denied because the status quo cannot be restored.

### D. Plaintiff's "Other Legal Theories" Fail to State a Claim Upon Which Relief Can Be Granted.

Plaintiff indicates she has included in the First Amended Complaint other legal theories previously rejected by the Court to avoid potential waiver. Those theories, such as the "show me the note defense" and application of the UCC, are rejected again for the reasons previously stated. (*See* Doc. 34.)

## VI. Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But the district court's discretion to deny leave to amend a complaint is

1  "especially broad" where the plaintiff already has had one or more opportunities to amend
2  her complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir.
3  1989). "Leave to amend need not be given if a complaint, as amended, is subject to
4  dismissal." *Moore v. Kayport Package, Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).
5  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."
6  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

7  The First Amended Complaint does not cure the deficiencies of the initial
8  complaint, and further amendment would be futile. The Court is unable to conceive of
9  any additional factual allegations that would permit Plaintiff to rescind the Deed of Trust
10 and Note without contradicting facts already pled. Therefore, further leave to amend the
11 First Amended Complaint as to LNV will not be granted.

12 Default was entered against Defendant Lender Services Direct, Inc., on March 25,
13 2011. Lender Services Direct has not moved to set aside the default, and Plaintiff has not
14 applied for entry of default judgment.

15 IT IS THEREFORE ORDERED that Defendant LNV Corporation's Motion to
16 Dismiss First Amended Complaint With Prejudice (Doc. 38) is granted.

17 IT IS FURTHER ORDERED that Plaintiff show cause **by August 15, 2011**, why
18 her First Amended Complaint as to Lender Services Direct, Inc., not be dismissed with
19 prejudice for lack of prosecution. If Plaintiff does not respond to this Order by August
20 15, 2011, the First Amended Complaint as to Lender Services Direct, Inc., will be
21 dismissed and the case terminated without further notice.

22 DATED this 1st day of August, 2011.

_____
Neil V. Wake
United States District Judge